IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO HILL,                        )
                                     )
         Plaintiff,                  )
                                     )
v.                                   )      CIVIL ACTION NO.  2:04cv823-CSC
                                     )
JEAN HARTZOG, *et al.,*              )
                                     )
         Defendants.                 )

**MEMORANDUM OPINION**[1]

In this 42 U.S.C. § 1983 action, plaintiff Antonio Hill, a prison inmate, alleges that officer Eddie Harris was deliberately indifferent to his safety by allowing him to be attacked and injured by another inmate.  The plaintiff seeks damages and injunctive relief.  In response to the orders of the court, the defendants filed a special report and answer as well as a supplemental special report. The court then informed the plaintiff that the defendants' special report as supplemented may, at any time, be treated as a motion for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment.  The plaintiff filed a response to the special report and the supplemental special report.   This case is now before the court for consideration of the defendants' motion for summary judgment which the court concludes is to be granted in part and denied in part.

---

[1]  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986);

2

*See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues.  All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant.  *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990); *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case."  *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

## DISCUSSION

The undisputed evidence demonstrates that, on January 5, 2004, plaintiff Hill and inmate Reginald Whigham got into a physical altercation while incarcerated at the Barbour County Jail.  On January 6, 2004, at the beginning of his 6:00 a.m. shift, defendant Harris escorted Hill and Whigham to an interview room where the inmates met with defendant Hartzog and two other jail officials.

What happened next is hotly disputed.  The plaintiff alleges that, during that interview, defendant Hartzog assured him that Whigham would be moved to another cell block, possibly to a single cell, because Hartzog believed Whigham "was a trouble maker." During the interview, Hill also told the jail staff that he "had a feeling" that the altercation was not over.

3

On the way back to his cell block, Hill saw defendant Harris and inmate Whigham laughing together in the hallway.  When Whigham saw Hill, Whigham approached Hill and threatened him.  According to Hill, Harris told Whigham to "shut up and stop."  Harris opened the cell block door to allow Hill entry into block.  Harris and Whigham remained in the hallway outside the cell block.  Hill was unable to get into his cell so, using the intercom, Hill asked Harris to open his cell door.  Whigham approached the cell block door, and according to Hill, said "I'm going to come in there and kick your ass and knock you out." Hill again asked Harris to open his cell door.  However, Harris opened the cell block door, allowing Whigham entry to the block.  Whigham immediately attacked Hill.

The defendants, on the other hand, assert that during the interview, both inmates "assured members of the jail staff that their altercation was a misunderstanding and a mistake, that it was over, that no harm had been done, and that there was no reason they should not be housed in the same cellblock, as neither presented a danger to the other."  (Aff. Eddie Harris, ¶ 4, p. 2; Aff. Jean Hartzog, ¶ 5, p. 2).  Harris then escorted both inmates back to the cell block, during which time, according to Harris, he had no indication that an altercation was imminent.  Harris asserts that he placed the two inmates in the same cell block only after receiving confirmation that he should do so.  A few minutes later, he witnessed Whigham striking Hill with his fists.

**A.  Defendant Eddie Harris**.  The plaintiff asserts that defendant Harris was deliberately indifferent to his safety by allowing inmate Reginald Whigham to enter the cell

4

block before allowing Hill access to his cell.  A prison official may be held liable under the eighth amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825 (1994). "When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).  *See also, Hopkins v. Britton*, 742 F.2d 1308, 1310 (11th Cir. 1984); *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).[2]  Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however.  *Davidson v. Cannon*, 474 U.S. 344 (1986).  Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended "evolving standards of decency," thereby rising to the level of a constitutional tort.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Hopkins*, 742 F.2d at 1310. The known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a guard's failure to act can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).

Taking the plaintiff's version of the facts as true, the court concludes that there exists disputed issues of fact regarding the actions of officer Harris that preclude summary

---

[2]  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

judgment.  Hill and Whigham had already been in one altercation.  When questioned by Hartzog, Hill expressed concern about Whigham.  On the way back to the cell block, Whigham threatened Hill in Harris' presence. Harris's own incident report indicates that Whigham said something to Hill.  "I . . . told Reginald not to say nothing to Angelo But (sic) he did."  (Defs' Ex. 2 attached to Special Report).   Once at the cell block, Hill asked Harris to open his cell door.  Despite his request, Harris did not open Hill's cell door.  Instead, Harris opened the cell block door allowing Whigham access to Hill.  Immediately prior to opening the cell block door, Whigham again threatened to assault Hill.  Consequently, the court concludes that there are disputed issues of fact about whether Harris knew that Hill faced a substantial risk of serious harm by being placed in the cell block with Whigham and disregarded that risk.  Summary judgment with respect to Hill's claim that Harris acted with deliberate indifference to his safety should be denied.

Furthermore, because of the disputed issues of fact, consideration of Harris' claim of qualified immunity is also precluded at this time.  If the facts are as Hill alleges, Harris would not be entitled to immunity because any correctional officer would know that the law was clearly established that failing to protect an inmate from a known threat rises to the level of a constitutional violation.  Thus, officer Harris' motion for summary judgment is due be denied.

**2. Defendant Jean Hartzog**.  The plaintiff alleges that defendant Hartzog is liable because she failed to establish a policy regarding separating inmates to avoid altercations or

assaults.  Supervisory personnel cannot be held liable under § 1983 for the actions of their

subordinates under a theory of respondeat superior.  *Monell v. Department of Social Services*,

436 U.S. 658, 691 (1978).  However, liability may be imposed if the plaintiff shows that the

defendant either personally participated in the alleged constitutional violation or instigated

or adopted a policy that violated the plaintiff's constitutional rights.  *See Hill v. Dekalb Reg'l*

*Youth Det. Ctr.*, 40 F.3d 1176, 1192 (11th Cir. 1994), *abrogated on other grounds Hope v.*

*Pelzer*, 536 U.S. 730 (2002).

> [Supervisory] liability under  section 1983 must be based on something more
> than a theory of respondeat superior.  Supervisory liability occurs either when
> the supervisor personally participates in the alleged constitutional violation or
> when there is a causal connection between actions of the supervising official
> and the alleged constitutional deprivation.  The causal connection can be
> established when a history of widespread abuse puts the responsible supervisor
> on notice of the need to correct the alleged deprivation, and he fails to do so.
> *Cross v. Alabama Dep't. of Mental Health & Mental Retardation*, 49 F.3d
> 1490, 1508 (11th Cir. 1995) (quoting  *Brown v. Crawford,* 906 F.2d 667, 671
> (11th Cir. 1990)); *accord Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir.
> 1992) ([A] supervisor may be held liable under  section 1983 if the supervisor
> had personal involvement in the constitutional deprivation or if a sufficient
> causal  connection  exists  between  the  supervisors  conduct  and  the
> constitutional violation.).

*Dolihite v. Maughon*,  74 F.3d 1027, 1052 (11th Cir. 1996).

Hill does not assert that Hartzog knew about Whigham's intent to commit a second

assault, nor does he allege that Hartzog had a policy of placing feuding inmates in the same

cell block.  Rather he alleges that because Hartzog had a policy of housing inmates in a safe

and secure facility, she should have ensured that Whigham and Hill were separated after their

altercation to prevent further assaults.  Hill does not contend, nor does he present any

7

evidence to suggest, that Hartzog knew or should have known that he was going to be subjected to a second attack by Whigham.  Although Hill alleges that Hartzog told him that he would be separated from Whigham, there is no showing that Hartzog was aware that Officer Harris would place Whigham in the same cell block as Hill or that Whigham would attack him.  Thus, Hill has failed to establish that Hartzog acted with deliberate indifference to his safety by allowing him to be placed a cell block with Whigham.  Accordingly, the motion for summary judgment with respect to Hill's deliberate indifference claim against Hartzog should be granted.

Finally, the plaintiff is seeking injunctive relief from the court requiring defendant Hartzog to enact a policy that prohibits feuding inmates from being placed in the same cell block.  Hill is no longer incarcerated at the Barbour County Jail.  The plaintiff is now an inmate at Easterling Correctional Facility.  Consequently, his declaratory and injunctive relief claims with regard to this facility are moot.  *County of Los Angeles v. Davis*, 440 U.S. 625 (1979).  There is nothing before the court to suggest that there is any reasonable likelihood of a recurrence of the alleged violation.  Thus, the plaintiff's claims for injunctive relief are moot and should be dismissed.

## CONCLUSION

Accordingly, it is

ORDERED as follows:

1.      That defendant Hartzog's motions for summary judgment be and is hereby

8

GRANTED.

2.     That defendant Harris' motion for summary judgment be and is hereby DENIED.

3.     That the plaintiff's claims for injunctive relief be and are hereby MOOT and DISMISSED.

4.     That this case be set for non-jury trial on May 31, 2006, at 10:00 a.m. in Courtroom 4B, United States Courthouse Complex, One Church Street, Montgomery, Alabama.

5.     WITNESSES.

(a)   <u>All</u> parties shall file a witness list at least 20 days before the trial. Witnesses not on the list will not be heard.

(b)   *Cases Proceeding In Forma Pauperis*.  If the plaintiff desires to procure attendance of witnesses by writ or subpoena, he shall file and serve – not later than 20 days before trial – a witness list containing the names, AIS number where applicable and addresses of *all* witnesses – whether a subpoena is sought or not – (inmate or civilian status) and a brief statement of the expected testimony of each witness, whether a subpoena is sought or not.  M.D. ALA. LR 45.1(b).  The plaintiff should be specific in stating the witnesses' expected testimony, because if their testimony is not material or is simply repetitive the court may in its discretion decline to order the subpoena of the witness. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).

9

Whether the witness is subpoenaed by a pauper or not, Rule 45(c) requires that your subpoena must be accompanied by an attendance fee ($40.00 per day), a subsistence fee ($99.00 per day) if overnight stay is required, and actual expenses of a common carrier or mileage (44.5¢ per mile each way), or it need not be obeyed.  The witness will be so informed by the subpoena.  It is the responsibility of the party requesting the subpoena to provide that money to the clerk's office for tender with the subpoena.

(c) *Subpoena by Non-Paupers*.  Subpoenas may be served in accordance with FED.R.CIV.P. 45(b).  If service by the United States Marshal is requested, the subpoena must be filed not less than 14 calendar days prior to the date of the trial and must contain the complete name and address of the witness.  M.D. ALA. LR(a)(1).

4. *Production of Plaintiff*.  The persons having custody of the plaintiff shall produce the plaintiff at trial.

Done this 9th day of March, 2006.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE